IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | |
| v. | ) | Criminal No. 3:10-00163 |
| | ) | Judge Trauger |
| | ) | |
| [30] RONDARIUS WILLIAMSON | ) | |

**MEMORANDUM and ORDER**

The defendant, Rondarius Williamson, has filed a Motion For New Trial And/Or Motion For Judgment of Acquittal (Docket No. 1632), to which the government has responded (Docket No. 1653), and in support of which the defendant has filed a Reply (Docket No. 1674). Defendant Williamson was convicted on Counts 1, 10, 11, 12, 13, 15, and 27 of the Second Superseding Indictment. His motion seeks only to overturn the verdicts on Counts 1 (RICO Conspiracy), 11 (Murder in Aid of Racketeering), 12 (Using and Carrying a Firearm During And In Relation to a Crime of Violence) and 13 (Murder Resulting From Using And Carrying a Firearm During And in Relation to a Crime of Violence). Counts 11, 12 and 13 relate to the murder of Andreus Taylor at the Tennessee State University (TSU) Gentry Center on May 18, 2009. Defendant Williamson does not challenge his conviction on Counts 10 or 15 (additional counts of Using And Carrying a Firearm During And in Relation to a Crime of Violence) or Count 27 (Conspiracy to Use And Carry Firearms During And in Relation to Crimes of Violence).

The charges against defendant Williamson and co-defendant, Keairus Wilson, were tried to a jury from February 28 through March 22, 2012. Co-defendant Wilson was convicted on eight counts but acquitted on one count of the Second Superseding Indictment.

1

## Motion For Judgment of Acquittal Notwithstanding The Verdict

The defendant has requested acquittal on four of the counts on which he was convicted on the basis that there was insufficient evidence to support the verdicts pursuant to Rule 29(c), FED. R. CRIM. P. A motion for judgment of acquittal on the basis of insufficient evidence calls upon the court to examine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt . . . . This review is quite limited . . . . [The] court does not weigh evidence, make credibility determinations, or substitute its judgment for that of the jury." *United States v. Owusu*, 199 F.3d 329, 341-42 (6th Cir. 2000) (internal citations omitted).

"The government must be given the benefit of all inferences which can reasonably be drawn from the evidence, even if the evidence is circumstantial. It is not necessary that the evidence exclude every reasonable hypothesis except that of guilt." *United States v. Carter*, 355 F.3d 920, 925 (6th Cir. 2004) (internal citations omitted). "Circumstantial evidence alone, if substantial and competent, may sustain a conviction under this deferential standard of review." *United States v. Beverly*, 369 F.3d 516, 531 (6th Cir. 2004) (internal citations omitted).

With regard to Count 1, the defendant maintains that the government presented no evidence of his participation in a RICO conspiracy other than his membership in the Bloods gang, which is insufficient for conviction. He argues that there was no evidence that he agreed with other gang members to commit crimes, that he ever attended gang meetings or that he committed the Andreus Taylor murder at all, let alone to increase his position in the gang or as an integral part of his membership in the gang or for a gang purpose. The defense did not contest that Mr. Williamson was a member of the Bloods gang, and there was ample evidence from the testimony of several cooperating gang members that acts of violence maintained and

increased one's status in the gang and were an integral aspect of membership in the gang. Moreover, acts or words of disrespect by rival gang members required an immediate response of retaliation by a violent act. As will be discussed herein, there was sufficient evidence presented at trial from which a jury could conclude that the murder of Andreus Taylor by defendant Williamson was just such a violent act in response to Mr. Williamson's having been struck the night before by Andreus Taylor at a club. Moreover, Williamson was with several Bloods gang members when he murdered Taylor, and there was evidence that a fellow gang member furnished him with the firearm used to commit the murder. In addition, the defendant was convicted on Count 10 of a February 9, 2009 shooting at a housing project, motivated by a disagreement because he had switched gangs, and on Count 15 of a robbery and carjacking, committed with another gang member. Al three of these violent acts were also charged as overt acts to the Count 1 RICO conspiracy count.

Giving the benefit of all inferences that can reasonably be drawn from the evidence to the government, the court finds that the evidence was sufficient, under the Rule 29 standard, for a jury to convict on Count 1, the RICO conspiracy count.

Counts 11, 12 and 13 relate directly to the Andreus Taylor murder at TSU's Gentry Center on May 18, 2009, the night of the Maplewood High School graduation ceremony held at that facility. Taylor was a Gangster Disciple gang member and, before becoming a Blood, defendant Williamson had been a Gangster Disciple gang member as well. On the night before the killing, Taylor and the defendant, along with other gang members, had been in a fight at a club, about which several witnesses, including Taylor's widow, testified. The defendant presented testimony that, at the time of the murder, Williamson's jaw was "wired shut" because of an injury. This evidence, including medical testimony, was presented to rebut testimony that

he had been struck hard in the jaw during the fight,[1] as well as to rebut certain identifications of him by people who did not notice whether or not his jaw was "wired shut" and to rebut whether or not he was speaking to various individuals upstairs at the Gentry Center before the murder.

Co-defendant and cooperating witness Adrian Montgomery testified that he went to the Maplewood graduation with co-defendant and fellow Blood member Anthony Lampkins and that they met up with Williamson and Terrence Jones once they got there. He testified that Williamson stated that he was "going to get somebody" and asked Terrence Jones for a gun, which Jones gave him. Shortly thereafter, the four friends walked down the stairs, and Montgomery saw defendant Williamson shoot Andreas Taylor. Montgomery and Lampkins went back upstairs and later met up on the basketball courts at TSU with the defendant and others. After arrest, Williamson told Montgomery on the phone to "stick to the same story" and also sent a letter to Montgomery, telling him to "keep your mouth shut" and asking if he was "with me or against me." There was also testimony that the defendant had a "TSU" tattoo on his face (which, of course, could be seen by the jurors), which defense counsel remarked in closing argument was "not evidence of anything but stupidity." Acacia Bonner, a teenager who was attending the Maplewood graduation, testified as an eyewitness to the Taylor murder. She had no connection to any of the parties and had come forward to police the day after the murder on her own to tell authorities what she had seen. She picked the defendant out of a photo lineup that day to an "80 percent certainty" and identified him at the trial as the person she saw pull a gun

---

[1] The theory presented was that, if he had been struck hard in the jaw while it was wired shut, he would have required medical attention, which apparently he did not seek. The defendant's physician testified that, when he removed the wires from the defendant's jaw several days after this fight occurred, he saw no evidence of additional trauma to the jaw. However, he further testified that the defendant could have experienced a strong blow that was not detected by him.

out of his pants and shoot the victim. She testified that she was sure of her identification because she had noticed Williamson upstairs before the murder and had "thought he was cute."

The defense put on several witnesses, some of whom said they were speaking with the defendant on the upper level of the Gentry Center when the shots were fired and that, therefore, the defendant could not have been the shooter. The defense called a witness who was working in the lobby of the Gentry Center, who disputed the testimony of some other witnesses as to the direction that the shooter had run after he fired the weapon. The defense introduced a surveillance video from TSU that showed the defendant standing around with three of his friends for some 10 to 15 minutes outside the Gentry Center after the graduation in order to counter testimony that they had met on the basketball court and to show that the defendant was all in black, while the eyewitness had testified that he had on a white shirt.[2] The defense was allowed to call an eyewitness expert, who attempted to blunt the allegedly inaccurate identification of the defendant by the eyewitness, Acacia Bonner.[3]

The jury had to weigh the conflicting testimony of many witnesses in order to arrive at their verdict. There were as many conflicts between the testimony of the various defense witnesses as there were between the defense witnesses and the government witnesses. However, the court cannot find that no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

The defendant's post-trial motion relies heavily upon the absence of Terrence Jones as a

---

[2] Of course, the jury could have concluded that the defendant discarded the white shirt after the shooting, and there was ample opportunity to do so.

[3] On cross examination, he revealed that his real specialty is the cross-race effect of witness identification. Bonner has a black father and a white mother; Williamson is black. This may have impacted his credibility with the jury.

witness available to the defense. The defendant maintained that the government had "procured" the absence of Terrence Jones, who was alleged to have given the gun to Williamson in order for him to commit the murder. The court considered the allegations of defendant Williamson in his motion to be sufficiently serious so as to justify an evidentiary hearing on whether or not the government had engaged in the misconduct alleged by the defendant.

The allegation was that the government had seen Terrence Jones at the sentencing of one of the defendants in this case the month before the trial and had requested to speak with him. One of the prosecutors and the main ATF case agent for this case spoke to Mr. Jones, and he reiterated what he had told a Metro detective two years earlier–that he was upstairs with the defendant and others when the shot was fired, that Williamson did not commit the murder, and that he had not furnished him with the gun. Although Jones claimed at the evidentiary hearing that the government representatives had told him that he was lying and that, if he lied at the trial of this case he would get five years in prison, this court found that testimony not credible, in light of the testimony of the case agent, the demeanor of Mr. Jones, and the inconsistencies within the testimony of Mr. Jones. He admitted that he had been served at the end of the fairly short interview with a trial subpoena and had been asked to return the following day, with the government offering to furnish him with an attorney. He states that he did not return the next day because he was afraid to. He felt that the government either wanted him to lie to stay out of jail or that the government was going to put him in jail if he told the truth at the trial. He maintained that he had "gone into hiding" so that he would not have to testify at the trial, and this substantiated the defense contention that the government had intentionally procured his absence from the trial so that he could deny that he had given the murder weapon to defendant Williamson. The longer Mr. Jones testified, the more his story unraveled. In the end, he

testified that the defendant, himself, had called him during the trial and told him that he did not need to come and testify because everything was "looking cool." He further testified that, if he had gotten a call from the defendant (or from the government), he would have come and testified because he had been served with a subpoena.

Quite apart from the unraveling of his story, Jones was not the material witness who would have made the difference between conviction and acquittal on the Andreas Taylor murder, as the defense maintains. Several other witnesses, who were not Bloods gang members as Jones was, testified on behalf of the defense that they were with the defendant when the shots were fired and that he was not the shooter. Aspects of Jones's testimony conflicted with the testimony of these other defense witnesses. For instance, Jones testified that Davante Smith, who had ridden to the graduation with defendant Williamson, Marquis Cooper, and Smith's girlfriend, never came inside the Gentry Center. Smith, on the other hand, testified at trial for the defense that he was with Williamson when the shots were fired. All of the defense witnesses who were standing with the defendant upstairs when the shots were fired obviously testified directly or by implication that no one handed a gun to Williamson. Therefore, having an additional witness, even the one who allegedly furnished the gun to Williamson, add to the chorus that no gun was handed to Williamson was not an essential element of the defense in any case.

The court finds, from the testimony presented at the evidentiary hearing held on this issue on June 28, 2012, that there was no prosecutorial misconduct and that the government did not procure the absence of Terrence Jones from the trial. The defense also claims that there was a *Brady* violation committed by the government by not furnishing the substance of Terrence Jones'

7

January 2012 statement to the defense, as it was exculpatory. However, there is no merit to this argument because his January 2012 statement was consistent with his statement made to Metro detectives in March of 2010, a statement which had been furnished to the defense in discovery long before the trial.

It is not the function of the court on a Rule 29 motion to weigh credibility or substitute its judgment for that of a jury. The court finds, in viewing the evidence in the light most favorable to the prosecution, that a rational jury could have found sufficient evidence upon which to convict the defendant of the RICO conspiracy and the counts related to the Andreas Taylor murder. For these reasons, the defendant's Motion For Judgment of Acquittal is **DENIED**.

## Motion For New Trial

Under Rule 33(a), FED. R. CRIM. P., the court may grant a new trial "if the interest of justice so requires." This defendant seeks a new trial on the ground that the proof on the challenged counts was against the manifest weight of the evidence. The defendant asks that the court sit as the thirteenth juror, assess the credibility of witnesses and determine that there was a miscarriage of justice, as this court may under this rule. *See United States v. Munoz*, 605 F.3d 359, 373 (6th Cir. 2010) (internal citations omitted).

Defense counsel put on a robust defense in this case that included medical proof, expert testimony, apparently impartial witnesses and extremely effective examinations and cross-examinations by counsel. The jury's job was a challenging one, and they deliberated for some two whole days. They acquitted Williamson's co-defendant on one of the counts, some indication of extremely careful deliberation. The court cannot find that the jury's verdict was

against the manifest weight of the evidence, nor that there was a miscarriage of justice in this conviction. Therefore, the Motion For New Trial is **DENIED**.

It is so **ORDERED.**

Enter this 13th day of August 2012.

_____
ALETA A. TRAUGER
United States District Judge